# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN DAVENPORT<br>22 Barclay Ct.<br>Blue Bell, Pa 19422 | :<br>:<br>:<br>: | CIVIL ACTION |
| Plaintiff, | :<br>: | No.:_____ |
| v. | :<br>: | |
| SPARK THERAPEUTICS, INC.<br>3737 Market St.<br>Philadelphia, PA 19104 | :<br>:<br>:<br>: | **JURY TRIAL DEMANDED** |
| Defendant. | :<br>: | |

## CIVIL ACTION COMPLAINT

Brian Davenport (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) by and through his undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. Plaintiff has initiated this action to redress violations Spark Therapeutics, Inc. (hereinafter referred to as "Defendant") of Title VII of the Civil Rights Act of 1964 ("Title VII" – 42 U.S.C. §§ 200d *et seq*.), Section 1981 of the Civil Rights Act of 1866 ("Section 1981" – 42 U.S.C. § 1981), and the Pennsylvania Human Relations Act ("PHRA").[1] As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

---

[1] Plaintiff's claims under the PHRA are referenced herein for notice purposes. Plaintiff intends to amend his complaint to include discrimination and retaliation claims under the PHRA once his claims have been administratively exhausted with the Pennsylvania Human Relations Commission ("PHRC"). Plaintiff's PHRA claims will mirror his Title VII claims asserted herein.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws.

3. This Court may properly assert personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

4. Pursuant to 28 U.S.C. § 1392(b)(1) and (b)(2), venue is properly laid in this district because Defendant is deemed to reside where it is subjected to personal jurisdiction, rendering Defendant a resident of the Eastern District of Pennsylvania.

## PARTIES

5. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6. Plaintiff is an adult individual, with an address as set forth in the caption.

7. Defendant is located at the above-captioned address and is a developer of gene therapy treatments, which treat debilitating genetic diseases.

8. At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the Defendant.

**FACTUAL BACKGROUND**

9. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

10. Plaintiff began working for Defendant on or about April 26, 2021.

11. During his tenure with Defendant, Plaintiff was a very hard-working employee, who performed his job well and was not subjected to any progressive discipline.

12. When Plaintiff applied to work with Defendant, he expressed interest in two different positions, GMP Warehouse Lead and Materials Management Lead.

13. Plaintiff was ultimately hired for the GMP Warehouse Lead position.

14. The Materials Management Lead position remained vacant until on or about November 29, 2021 (discussed further *infra*).

15. Throughout Plaintiff's employment with Defendant, he continued to discuss with his direct supervisor and Head of Manufacturing, Eric Hacherl (Caucasian – hereinafter "Hacherl") his interest in working as the Materials Management Lead (as it was a step up from the GMP Warehouse Lead position for which Plaintiff was hired).

16. Hacherl consistently told Plaintiff that he would keep the conversation open for him to eventually fill the role of Materials Management Lead but that he had no intent to fill the position anytime soon, because he liked the reporting structure as it was.

17. In or about September/October of 2021, Defendant instituted a company-wide COVID-19 vaccine mandate, which required all employees to be fully vaccinated by October 15, 2021.

18. On October 12, 2021, Plaintiff emailed Defendant's Human Resources ("HR") department and informed them that he wanted to request a religious accommodation to the vaccine

mandate.

19. In response to Plaintiff's aforesaid request for an exemption to the vaccine mandate, Defendant's HR provided Plaintiff with a form to complete explaining why his religion (Christianity) prevented him from getting the vaccine and gave Plaintiff until October 26, 2021 to submit the request form.

20. Plaintiff submitted the aforesaid request form for a religious exemption/accommodation back to HR on October 25, 2021.

21. After submitting his religious exemption/accommodation form, Plaintiff was asked by HR to provide additional information, which he did on October 28, 2021.

22. On or about November 12, 2021, Olivia Martin (HR Service Delivery Specialist) emailed Plaintiff stating that his religious accommodation request was being reviewed by an independent 3rd party and that Defendant would have an update soon.

23. On November 19, 2021, Plaintiff was informed that his request for a religious accommodation (*i.e.* to be exempt from the COVID-19 vaccine mandate) was granted and that instead of getting the vaccine, Plaintiff would be required to follow other safety protocols, such as undergoing COVID-19 tests when required to be onsite.

24. Specifically, on November 23, 2021, Plaintiff received an email from Joe Paradiso (Head of Environmental Health and Safety – hereinafter "Paradiso") stating that he was being placed in a COVID-19 testing group and would be required to test negative 72 hours prior to physically reporting to his work location or attending a work off-site event.

25. Defendant's policy regarding the COVID-19 testing that Plaintiff was required to undergo as a religious accommodation, indicated that test results would be valid for 72 hours and

that he may be required to test multiple times a week if working onsite or attending a multiday Defendant-sponsored event.

26. Plaintiff was further informed by Paradiso that he would receive an email from a lab vendor BRIO, with tracking information and within 2-4 days after his receipt of the tracking information, Plaintiff would receive 10 tests (which he would need to reorder when there were only three tests left).

27. Plaintiff agreed to comply with Defendant's aforesaid COVID-19 testing protocol.

28. However, shortly after requesting a religious accommodation from the COVID-19 vaccine mandate, Plaintiff began to be subjected to hostility and animosity by Defendant's management and HR department.

29. For example, shortly after requesting a religious accommodation (discussed *supra*), Plaintiff learned that Defendant began searching to fill the aforementioned Materials Management Lead position.

30. Upon learning this information, Plaintiff communicated with Hacherl that he would like to be considered for the position. However, despite Hacherl's prior assurances that communications would be kept open for Plaintiff to fill this position once he was ready, Plaintiff was told by Hacherl that he would not be considered for the Materials Management Lead position because he wanted Plaintiff to have more lean warehousing experience.

31. Hacherl's reasoning for not considering Plaintiff for the Materials Management Lead position did not make any sense because (1) Plaintiff had plenty of lean warehouse experience, as he had been doing it for approximately seven (7) years; and (2) upon information and belief, the individual who Defendant ultimately hired into the Materials Management Lead

position, James Costa (Caucasian – hereinafter Costa") had less experience and skills than Plaintiff (including lean warehouse experience).

32. While the reporting structure for the Materials Management Lead originally entailed Costa having three leads reporting to him (including Plaintiff), Plaintiff and the rest of his team were informed on or about November 30, 2021 that Costa's title would be "GMP Warehouse Leader" and that Plaintiff would be the only lead reporting to Costa.

33. Plaintiff found Defendant's aforesaid change in reporting structure to be very concerning because his and Costa's titles were very similar and there was a significant overlap in the roles that both Costa and Plaintiff would be performing. Therefore, it appeared that Defendant was taking steps to eventually terminate Plaintiff's role (for discriminatory and retaliatory reasons).

34. Furthermore, after it was announced that Costa was hired, Plaintiff was abruptly informed that he was being removed from his office that he shared with his direct report and placed into a cubical. Plaintiff was further told that Costa would be moving into his prior office.

35. When Plaintiff questioned why he was being removed from his office (as discussed *supra*), Defendant claimed that the reasons for moving him to a cubicle was because (1) of a policy that encouraged managers not to share an office with a direct report (even though Defendant had allowed Plaintiff to share an office with his direct report for months at that point and Defendant permitted other managers to share an office with their direct reports); and (2) Plaintiff was unvaccinated and social distancing policies could not be followed in a shared office (even though Defendant allowed Plaintiff to work with his direct report in the same office since October 15, 2021, despite knowing that he was not and would not be vaccinated).

36. In addition to the foregoing, Defendant's management's and HR's treatment of Plaintiff surrounding their need to accommodate his religious beliefs was very disturbing and at times, threatening.

37. On or about December 1, 2021, Plaintiff informed Hacherl that he wanted to discuss his concerns about the recent events that had transpired (including the discriminatory/retaliatory actions discussed above).

38. On or about December 2, 2021, Hacherl and Plaintiff met and discussed Plaintiff's concerns regarding the events that had transpired and actions that were taken since late November of 2021 (discussed *supra*), including the fact that Plaintiff believed these actions were taking because of his request for a religious accommodation to the COVID-19 vaccine mandate.

39. While Hacherl attempted to assure Plaintiff during their December 2, 2021 meeting that his religious accommodation request had nothing to do with Defendant's recent actions, the events that transpired following his aforesaid request showed otherwise.

40. On December 7, 2021, Hacherl sent Plaintiff an email stating that he shared Plaintiff's concerns with HR and that Jamie Schmid (Lead Human Resources Business Partner – hereinafter "Schmid", Caucasian) was onsite that day and wanted to have a 3-way meeting "to close the loop on [Plaintiff's] concerns."

41. During his meeting with Hacherl and Schmid, Plaintiff repeated his aforesaid concerns regarding Defendant's actions in late November/early December and again reiterated that it seemed these actions may have taken in retaliation for his religious accommodation request.

42. When the topic of changing Plaintiff's office to a cubicle arose during the aforesaid December 7, 2021 meeting, Schmid became very hostile and told Plaintiff that because he did not

get the vaccine, it was Plaintiff's responsibility to remove himself from the office and remain six feet away from all employees.

43. Schmid further stated during her December 7, 2021 meeting with Plaintiff and Hacherl that if he did not remain six feet away from other employees, he would be subjected to corrective action.

44. In response, Plaintiff asked Schmid if there were other options aside from staying six feet away from other employees, such as working remotely some days, to which Schmid responded in a hostile manner: "there is another option and that's termination."

45. Plaintiff was taken aback by the tone and hostility Schmid was displaying towards him during the December 7, 2021 meeting and expressed concerns about the same. Plaintiff further stated that there was no reason for Schmid to bring up termination.

46. Schmid then claimed toward the end of the meeting that Plaintiff was raising his voice, which is completely false. At this point, Plaintiff felt that Schmid was trying to paint him as an aggressive black man and he began to feel uncomfortable.

47. Because of Schmid's aforesaid exhibited hostility during the December 7, 2021 meeting, Plaintiff stated that he was feeling uncomfortable and excused himself from the meeting.

48. When Plaintiff excused himself from the December 7, 2021 meeting, Schmid asked Plaintiff to close the door behind him, which he did.

49. Unfortunately, Schmid's behavior towards Plaintiff in the December 7, 2021 meeting was not the first time that Plaintiff observed discriminatory animus being exhibited towards a black male, as he also witnessed Defendant's management discriminate against one of his former direct reports who was a black male during the initial hiring process (and attempted to

find any reason not to hire him) and he himself had been passed over for a promotion in favor of a Caucasian individual will less experience and qualifications.[2]

50. Following Plaintiff's meeting with Hacherl and Schmid on December 7, 2021, he emailed Amber Wynne (Head of Diversity, Equity & Inclusion – hereinafter "Wynne") and Carla Gobantes (Diversity, Equity & Inclusion Lead) to report racial discrimination occurring within Defendant and asked what the next steps would be to escalate his complaint.

51. Wynne never provided a response to Plaintiff's email (discussed *supra*). Instead on December 8, 2021, Plaintiff was verbally informed he was being terminated from his employment with Defendant because he allegedly raised his voice in the December 7, 2021 meeting with Hacherl and Schmid and slammed the door upon exiting the meeting.

52. Plaintiff was not provided with a reason for his termination in writing, despite his multiple requests for the same.

53. In Defendant's position statement, Defendant states Plaintiff's alleged "unprofessional, belligerent, and disrespectful behavior," "his failure to notify the Management that he was not reporting to work on both the December 7th and 8th," and "his purposeful mischaracterization of Hacherl and Schmid's communications to him during the previous day's meeting" were all reasons for Plaintiff's termination.

54. First, Plaintiff was never told at the time of his termination that he was being separated because of "his failure to notify the Management that he was not reporting to work on both the December 7th and 8th" or "his purposeful mischaracterization of Hacherl and Schmid's communications to him during the previous day's meeting" – as he would have disputed both.

---

[2] During the hiring process, this individual was labeled as aggressive (which he never once was). Plaintiff specifically expressed his concerns to Amy Kocak and Dan Loney (from Defendant's HR department) about making those comments when it came to the individual's protected class.

55. Furthermore, even though Plaintiff was terminated from Defendant for alleged misconduct, Defendant's management still offered him an unsolicited severance agreement requiring that he waive any and all claims against Defendant (including those of religious discrimination, race discrimination, and retaliation) in exchange for a minimal sum of money.

56. Plaintiff was told that Defendant does not normally offer severance to employees who have been terminated but an exception was being made for him.[3]

57. Plaintiff believes and therefore avers that he was terminated for discriminatory and retaliatory reasons under Title VII.

## COUNT I
## Violations of Title VII
**([1] Religious Discrimination;[2] Hostile Work Environment; [3] Retaliation)**

58. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

59. In or about October of 2021, Plaintiff disclosed his religion to Defendant's management and requested a religious accommodation.

60. After disclosing his religion and requesting a religious accommodation, Plaintiff was subjected to hostility and animosity, such that he was subjected to a hostile work environment.

61. In addition to being subjected to a hostile work environment (and/or as part of the hostile work environment), Defendant refused to hire/promote Plaintiff into the role of Materials

---

[3] *See e.g. Staffieri v. Northwestern Human Servs.*, 2013 U.S. Dist. LEXIS 72115 at **14-15 (E.D. Pa. May 22, 2013)(an employer who offered severance when policies did not require upon condition of waiving FMLA claim supported finding of pretext in FMLA claim among other facts); *See also Bartlett v. NIBCO Inc.*, 2011 U.S. Dist. LEXIS 28072 (N.D. Ind. 2011)("Severance pay packages contingent upon a release of claims which are offered *contemporaneously with the notice of termination* are *not* covered by [Rule 408]", and the motive in offering same is admissible evidence in a retaliation claim and is admissible at trial in this case); *Karl v. City of Mountlake Terrace*, 2011 U.S. Dist. LEXIS 59085 (W.D. Wash. 2011)(severance agreements are admissible in retaliation claims when made contemporaneous to termination, as they are not governed by FRE 408); *EEOC v. Republic Servs., Inc.*, 640 F. Supp. 2d 1267 (D. Nev. 2009)(denying summary judgment and considering as evidence in wrongful termination case that a company would offer severance when an employee is supposedly terminated in a manner that doesn't warrant severance per an explicit company policy).

10

Management Lead/GMP Warehouse Leader, despite prior assurances from Defendant's management that communications would be kept open for Plaintiff to assume this role once Hacherl was ready to fill it.

62. The hostility and animosity that Plaintiff was subjected to after disclosing his religion and requesting a religious accommodation was so severe that he was forced to complain about the same to Defendant's management and HR department in or about December of 2021.

63. Shortly after requesting a religious accommodation and complaining of retaliation (in response to requesting a religious accommodation), Plaintiff was abruptly terminated from his employment with Defendant.

64. Plaintiff believes and therefore avers that his religion was a motivating and/or determinative factor in the decision not to promote Plaintiff and/or to terminate his employment.

65. Plaintiff believes and therefore avers that Defendant chose not to promote Plaintiff and/or ultimately terminated his employment in retaliation for complaining of religious discrimination/retaliation in advance of his termination.

66. These actions as aforesaid constitute unlawful discrimination, retaliation, and a hostile work environment under Title VII.

### COUNT II
### Violations of 42 U.S.C. Section 1981
### (Race Discrimination & Retaliation)

67. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

68. Plaintiff believes and therefore aver that his race as a motivating or determinative factor in Defendant's decision to not hire/promote him into the position of Materials Management Lead/GMP Warehouse Leader and/or to ultimately terminate his employment with Defendant.

69. Plaintiff also believes and therefore avers that he was terminated in retaliation for complaining of racial discrimination in advance of his termination.

70. These actions as aforesaid constitute retaliation under Section 1981.

## COUNT III
### Violations of Title VII
### (Racial Discrimination & Retaliation)

71. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

72. Plaintiff believes and therefore aver that his race as a motivating or determinative factor in Defendant's decision to not hire/promote him into the position of Materials Management Lead/GMP Warehouse Leader and/or to ultimately terminate his employment with Defendant.

73. Plaintiff also believes and therefore avers that he was terminated in retaliation for complaining of racial discrimination in advance of his termination.

74. These actions as aforesaid constitute unlawful discrimination, retaliation, and a hostile work environment under Title VII.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C. Plaintiff is to be awarded punitive damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful,

deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

  D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation); and

  E. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

  F. Plaintiff is to be awarded any and all statutory enhancements available as a matter of law.

  G. Plaintiff demands trial by jury on all issues so triable consistent with Fed. R. Civ. P. 38(a)(1).

          Respectfully submitted,

          **KARPF, KARPF & CERUTTI, P.C.**

     By: _____
       Ari R. Karpf, Esq.
       3331 Street Rd.
       Two Greenwood Square, Suite 128
       Bensalem, PA 19020
       (215) 639-0801

Dated:  July 7, 2022

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Brian Davenport | : | CIVIL ACTION |
| v. | : | |
| Spark Therapeutics, Inc. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.   ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.   ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.   ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)   ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   (X)

| 7/7/2022 | _[signature]_ | | Plaintiff |
|---|---|---|---|
| **Date** | **Attorney-at-law** | | **Attorney for** |
| (215) 639-0801 | (215) 639-4970 | | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | | **E-Mail Address** |

(Civ. 660) 10/02

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: 22 Barclay Court, Blue Bell, PA 19422

Address of Defendant: 3737 Market Street, Philadelphia, PA 19104

Place of Accident, Incident or Transaction: Defendant's place of business

---

**RELATED CASE, IF ANY:**

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes [ ]  No [X]

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes [ ]  No [X]

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes [ ]  No [X]

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes [ ]  No [X]

I certify that, to my knowledge, the within case [ ] is / [X] is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 7/7/2022    _____    ARK2484 / 91538
                  *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

A. *Federal Question Cases:*
1. [ ] Indemnity Contract, Marine Contract, and All Other Contracts
2. [ ] FELA
3. [ ] Jones Act-Personal Injury
4. [ ] Antitrust
5. [ ] Patent
6. [ ] Labor-Management Relations
7. [X] Civil Rights
8. [ ] Habeas Corpus
9. [ ] Securities Act(s) Cases
10. [ ] Social Security Review Cases
11. [ ] All other Federal Question Cases
    *(Please specify):* _____

B. *Diversity Jurisdiction Cases:*
1. [ ] Insurance Contract and Other Contracts
2. [ ] Airplane Personal Injury
3. [ ] Assault, Defamation
4. [ ] Marine Personal Injury
5. [ ] Motor Vehicle Personal Injury
6. [ ] Other Personal Injury *(Please specify):* _____
7. [ ] Products Liability
8. [ ] Products Liability – Asbestos
9. [ ] All other Diversity Cases
    *(Please specify):* _____

---

### ARBITRATION CERTIFICATION
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Ari R. Karpf, counsel of record *or* pro se plaintiff, do hereby certify:

[X] Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

[ ] Relief other than monetary damages is sought.

DATE: 7/7/2022    _____    ARK2484 / 91538
                  *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

JS 44  (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
DAVENPORT, BRIAN

**(b)** County of Residence of First Listed Plaintiff: Montgomery
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Karpf, Karpf & Cerutti, P.C.; 3331 Street Road, Two Greenwood Square, Suite 128, Bensalem, PA 19020; (215) 639-0801; akarpf@karpf-law.com

## DEFENDANTS
SPARK THERAPEUTICS, INC.

County of Residence of First Listed Defendant: Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated *or* Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated *and* Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC 881 | 422 Appeal 28 USC 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane / 365 Personal Injury - Product Liability | 690 Other | 423 Withdrawal 28 USC 157 | 376 Qui Tam (31 USC 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | | | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander / 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | 410 Antitrust |
| 150 Recovery of Overpayment & Enforcement of Judgment | 330 Federal Employers' Liability | | 820 Copyrights | 430 Banks and Banking |
| 151 Medicare Act | | | 830 Patent | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 340 Marine / 368 Asbestos Personal Injury Product Liability | | 835 Patent - Abbreviated New Drug Application | 460 Deportation |
| | 345 Marine Product Liability | | 840 Trademark | 470 Racketeer Influenced and Corrupt Organizations |
| 153 Recovery of Overpayment of Veteran's Benefits | | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | 480 Consumer Credit |
| 160 Stockholders' Suits | 350 Motor Vehicle / 370 Other Fraud | 710 Fair Labor Standards Act | 861 HIA (1395ff) | 490 Cable/Sat TV |
| 190 Other Contract | 355 Motor Vehicle Product Liability / 371 Truth in Lending | 720 Labor/Management Relations | 862 Black Lung (923) | 850 Securities/Commodities/Exchange |
| 195 Contract Product Liability | 360 Other Personal Injury / 380 Other Personal Property Damage | | 863 DIWC/DIWW (405(g)) | |
| 196 Franchise | | | 864 SSID Title XVI | 890 Other Statutory Actions |
| | / 385 Property Damage Product Liability | 740 Railway Labor Act | 865 RSI (405(g)) | 891 Agricultural Acts |
| | 362 Personal Injury - Medical Malpractice | 751 Family and Medical Leave Act | | 893 Environmental Matters |
| | | | | 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 790 Other Labor Litigation | **FEDERAL TAX SUITS** | |
| 210 Land Condemnation | 440 Other Civil Rights | **Habeas Corpus:** | 791 Employee Retirement Income Security Act | 870 Taxes (U.S. Plaintiff or Defendant) | 896 Arbitration |
| 220 Foreclosure | 441 Voting | 463 Alien Detainee | | | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 230 Rent Lease & Ejectment | [X] 442 Employment | 510 Motions to Vacate Sentence | | 871 IRS—Third Party 26 USC 7609 | |
| 240 Torts to Land | 443 Housing/Accommodations | 530 General | | | |
| 245 Tort Product Liability | 445 Amer. w/Disabilities - Employment | 535 Death Penalty | | | 950 Constitutionality of State Statutes |
| 290 All Other Real Property | 446 Amer. w/Disabilities - Other | **Other:** | **IMMIGRATION** | | |
| | | 540 Mandamus & Other | 462 Naturalization Application | | |
| | 448 Education | 550 Civil Rights | 465 Other Immigration Actions | | |
| | | 555 Prison Condition | | | |
| | | 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII (42USC2000); Section 1981 (42USC1981)
Brief description of cause:
Violations of Title VII, Section 1981 and the PHRA.

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.
- DEMAND $
- CHECK YES only if demanded in complaint:
- JURY DEMAND: [X] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE: 7/7/2022
SIGNATURE OF ATTORNEY OF RECORD: *[signature]*

**FOR OFFICE USE ONLY**

RECEIPT #   AMOUNT   APPLYING IFP   JUDGE   MAG. JUDGE

[Print] [Save As...] [Reset]